UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANDREW DEAN SNELLING,**

     **Plaintiff,**

**v.**                             **Docket No.:**

**TRIBAL VAPORS, SMOKE FREE
TECHNOLOGIES, INC. d/b/a
VAPORBEAST.COM, and SHENZHEN MXJO
TECHNOLOGY CO., LTD.,**

     **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by and through his attorneys, **JOHNSON BECKER, PLLC** and **THE SPENCE LAW FIRM NM, LLC**, upon information and belief, at all times hereinafter mentioned, allege as follows:

## NATURE OF THE ACTION

1.     This is a negligence and product liability action seeking recovery for substantial personal injuries and damages suffered by the PLAINTIFF ANDREW DEAN SNELLING (hereafter referred to as "Plaintiff"), after Plaintiff purchased and used two MXJO IMR 18650 lithium ion battery (hereafter referred to as "Subject Batteries") marketed, sold, and distributed by **DEFENDANT TRIBAL VAPORS** (hereafter referred to as "Defendant Tribal Vapors") and **DEFENDANT SMOKE FREE TECHNOLOGIES, INC. d/b/a VAPORBEAST.COM** (hereafter referred to as "Defendant VaporBeast") by and through their officers, employees and agents. The Subject Batteries were designed, manufactured, marketed, distributed and sold by

**DEFENDANT SHENZHEN MXJO TECHNOLOGY CO., LTD** (hereafter referred to as "Defendant MXJO").

<u>**PARTIES, JURISDICTION & VENUE**</u>

2.       Plaintiff is a citizen and resident of the City of Park Rapids, Hubbard County, State of Minnesota.

3.       Upon information and belief, Defendant Tribal Vapors is a New Mexico company, with its principal place of business located at 616 E 10th St., Alamogordo, New Mexico 88310.

4.       Defendant Tribal Vapors markets, sells and distributes e-cigarette products and accessories, including the Subject Batteries purchased by Plaintiff which are at issue in this lawsuit.

5.       At all times relevant herein, Defendant Tribal Vapors caused tortious actions and/or omissions committed in whole or in part within the State of New Mexico, which resulted in injuries to Plaintiff in New Mexico.

6.       Defendant VaporBeast is a Delaware corporation, with its principal place of business located at 2544 Campbell Pl, Suite 125, Carlsbad, California 92009.

7.       Defendant VaporBeast markets, sells and distributes e-cigarette products and accessories, including the Subject Batteries purchased by Plaintiff which are at issue in this lawsuit. In addition, Defendant VaporBeast has conducted substantial, ongoing business in this state and has extensive, ongoing, and specific contacts with the State of New Mexico that include, but are not limited to, the following:

a.   At all times relevant herein, Defendant VaporBeast has had continuing contacts with New Mexico by supplying, selling, importing and distributing goods, including but not limited to the Subject Batteries, with the actual knowledge and/or reasonable expectation that they will be used in this State and which are in fact used, sold, distributed, and retailed in this State;

2

b.  Defendant VaporBeast sold or otherwise placed into its distribution chain the Subject Batteries that caused the injuries at issue in this matter;

c.  Defendant VaporBeast has received substantial compensation from the sale of its products in this state, including but not limited to MXJO IMR 18650 lithium ion batteries;

d.  In addition, Defendant VaporBeast's contacts with New Mexico principally relate to the placement of electronic devices, including lithium ion batteries, into the stream of commerce, and all of the conduct associated with placing those products into the stream of commerce in New Mexico and associated with this civil action are related to and connected with the placement of batteries used in electronic cigarette devices into the stream of commerce.

8.      Upon information and belief, Defendant MXJO is a corporation organized and existing under the laws of the People's Republic of China, with a principal business address of Guangxinyuan Creative Park, No. 2005 Xingye Road, Xixiang Sub-District, Bao'an District, City of Shenzhen, People's Republic of China. Defendant MXJO is engaged in the business of manufacturing, designing, marketing, distributing, and selling "vape energy products,"[1]  such as the Subject Batteries. Defendant MXJO may be served via the *Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters*.

9.      Defendant MXJO is engaged in the business of manufacturing, designing, testing, marketing, certifying, supplying, selling, importing and distributing lithium ion batteries including but not limited to the Subject Batteries purchased by Plaintiff. In addition, Defendant MXJO has conducted substantial, ongoing business in this state and has extensive, ongoing, and specific contacts with the State of New Mexico that include, but are not limited to, the following:

a.  At all times relevant herein, Defendant MXJO has had continuing contacts with the State of New Mexico by transacting substantial business in this state via manufacturing, designing, testing, marketing, certifying, supplying, selling, importing and distributing goods, including but not limited to the Subject Batteries,

---

[1]  *See*  http://www.mxjotech.com/index.php/home/archive/index?id=2  (last accessed July 23, 2019) ("All MXJO batteries and chargers have passed many international testing and got certificates, like CE, RoHs, MSDS, un38.3 etc. You can be assured that they are safe and durable enough. Moreover, we are innovating and developing more products to meet customers' requirements.")

with the actual knowledge and/or reasonable expectation that they will be used in this state and which are in fact used in this state;

b.  Defendant MXJO designed, manufactured, sold or otherwise placed into its distribution chain the Subject Batteries that caused the injuries at issue in this matter;

c.  Defendant MXJO has received substantial compensation from the sale of its products in this state, including but not limited to MXJO IMR 18650 lithium ion batteries;

d.  In addition, Defendant MXJO's contacts with New Mexico principally relate to the placement of electronic devices, including lithium ion batteries, into the stream of commerce, and all of the conduct associated with placing those products into the stream of commerce in New Mexico and associated with this civil action are related to and connected with the placement of batteries used in electronic cigarette devices into the stream of commerce.

10.  Therefore, at all times relevant herein, Defendant MXJO has purposefully availed itself of the privilege of conducting business in the State of New Mexico has transacted business in the State of New Mexico, contracted to distribute and supply its products in the State of New Mexico, regularly caused its products to be sold in the State of New Mexico, and this action arises out of business transacted in, as well as a tortious actions and/or omissions committed in whole or in part within New Mexico, and which resulted in injuries to Plaintiff in New Mexico.

11.  Accordingly, this Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

12.  Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

13.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants above-named have sufficient minimum contacts with the State of New Mexico and

have intentionally availed themselves of the markets within New Mexico through the promotion, sale, marketing, and distribution of their products.

## FACTUAL BACKGROUND

14.     Manufacturers, distributors, and sellers of electronic cigarettes, or "e-cigarettes," as they are more commonly known, claim to provide a tobacco-free and smoke-free alternative to traditional cigarettes. E-cigarettes offer doses of nicotine via a vaporized solution.

15.     All e-cigarettes are designed and function in a similar way. They consist of three primary component parts: a tank or cartridge that is filled with a liquid (known as "juice" or "e-liquid")[2] that usually contains a concentration of nicotine; an "atomizer" or "cartomizer", which heats and converts the contents of the liquid-filled cartridge to a vapor that the user then inhales (hence the term, "vaping"); and a battery, which provides power for the atomizer. The atomizer itself typically contains three components: the casing; the wire (or "coil"); and the wicking material. The wire is wrapped around the wicking material (usually cotton) in a coil formation; the two ends of the coil are then connected to the casing in a way that permits contact with the battery. When e-liquid is added to the e-cigarette's tank, the wicking material absorbs it. When the user activates the e-cigarette's battery, the coil heats, vaporizing the e-liquid within the wicking material.



*See* http://vapingguides.com/blog/vapor-trails-2/atomizer-vs-cartomizer/ (last accessed July 23, 2019).

---

[2] While the ingredients of the liquid vary from brand to brand, E-Juice typically contains 95% propylene glycol and glycerin. Hundreds of different types and brands of E-Juice exist, and come in flavors such as cherry, cheesecake and cinnamon.

16.     Heating coils feature a specific resistance,[3] which is measured in ohms.[4]  In order for an e-cigarette to work effectively (and safely) the battery voltage must be carefully balanced with the heating coil resistance. If the battery voltage is too high and the resistance is too low, the heating coil can overheat and damage the battery, allowing for "thermal runaway"[5] to occur, whereby the internal battery temperature can cause a fire or explosion, and which is often the result of "poor design, use of low quality materials … [and] manufacturing flaws and defects…."[6]

17.     E-cigarette batteries, like the Subject Batteries in this case, are typically cylindrical lithium-ion batteries. Some e-cigarette batteries are rechargeable, and others are disposable. Some e-cigarettes are closed systems, in which prefilled tanks are used; others are also open systems that allow the user to manually refill the tank with e-liquid. E-cigarettes come in pen form (these are usually plastic and are modeled after a traditional cigarette) and in a form known as a 'mod.' Mods are metal devices that are heavier than pen e-cigarettes and carry a much higher capacity for juice and creation of vapor. There are many different types of mods, some of which require the use and replacement of atomizer coils like those described above.

---

[3] Specific resistance is the measure of the potential electrical resistance of a conductive material. It is determined experimentally using the equation $\rho = RA/l$, where R is the measured resistance of some length of the material, A is its cross-sectional area (which must be uniform), and l is its length.

[4] Ohms are the standard international unit of electrical resistance, expressing the resistance in a circuit transmitting a current of one ampere when subjected to a potential difference of one volt.

[5] Thermal runaway refers to a chemical reaction in which a repeating cycle of excessive heat causes more heat until an explosion occurs. According to the USFA, one of the main causes of thermal runaway is the battery overheating. *See generally*, U.S. Fire Administration, "Electronic Cigarette Fires and Explosions in the United States 2009 – 2016," updated July 2017.

[6] *See* Ben DJ. Burn Care Res. 2009 Nov-Dec; 30(6): 1048.

18.     E-cigarette batteries, like the Subject Batteries, typically consist of layers of metallic anode and cathode[7] material separated by a porous film or "wrapping"[8] which holds liquid electrolytes. The electrolytes used in these batteries are either flammable or combustible liquids.

19.     While e-cigarettes were first patented in 2003, they first entered the market exclusively in China in 2004 and did not first appear in the United States until 2007. Since that time, U.S. sales of electronic cigarettes have risen dramatically — from approximately $20 million in 2008 to $2.5 billion in 2014. According to some media sources, industry experts predict the e-cigarette industry will reach $32.11 billion by 2021.

20.     Lithium ion batteries, commonly used in e-cigarettes, pose a risk of fire and explosion.[9] A medical case report of a man in New Jersey, whose e-cigarette exploded in his pocket causing him severe burns, noted, "the potential for serious burn injuries related to device malfunction is of concern."[10]

21.     Some tout e-cigarettes as a safer alternative to traditional cigarettes because e-cigarettes do not contain tobacco, do not actually burn or create smoke, and do not pose the same risks of second-hand smoke inhalation. However, these supposedly 'safer' alternatives to traditional cigarettes are still the subject of debate, as they still often provide nicotine, which is a

---

[7] The cathode of a device is the terminal where the energy current flows out, as where the anode is where the energy current flows in.

[8] The battery "wrapping" is often made of plastic or other porous film and serves to keep the liquid electrolytes within the battery from coming into direct contact with outside sources.

[9] Lithium-ion batteries have been referred to as the "mini bomb in your pocket" due to its known ability to spontaneously ignite. *See* Ben D., Ma B., Liu L, et al., *Unusual Burns with Combined Injuries Caused by Mobile Phone Explosion: Watch Out for the "mini Bomb!"*, J. Burn Care Res. 2009 Nov-Dec; 30(6): 1048.

[10] *Spontaneous Electronic Cigarette Explosion: A Case Report, American Journal of Medical Case Reports*, 2015, Vol. 3, No. 4, 93-94, 94.

neurotoxin and extremely addictive. Further, the actual and long-term effects of the chemicals in e-liquid and vapor are unknown, as the technology is still relatively new.

22.     Only a few federal regulations have been promulgated or proposed regarding e-cigarette sales and use. Many of these products are shipped from China and placed into the stream of commerce without any knowledge as to what is in them, how they were made, or whether they are safe for consumers.

23.     In 2009, the United States Food and Drug Administration ("FDA") first attempted to regulate e-cigarettes under the Food, Drug, and Cosmetic Act ("FDCA"). E-cigarette manufacturers then successfully sued the FDA, claiming e-cigarettes should not be considered medical devices subject to the provisions of FDCA. Because of this ruling and lack of regulatory oversight, e-cigarette sales skyrocketed.

24.     On April 25, 2014, the FDA released a proposed regulation that would extend the statutory definition of "tobacco product" to include e-cigarettes. While the FDA regulates traditional cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco under its tobacco control authority, e-cigarettes are not yet defined as a tobacco product.

25.     An October 2014 report notes the proposed FDA regulations do not include any consideration of the battery or electronic components of the devices, as the FDA is only addressing the health effects of vapor inhalation. [11] Further, the U.S. Fire Administration noted the World Health Organization recently proposed member states adopt stringent controls on e-cigarettes, but did not include any language addressing the electronics themselves. The U.S. Consumer Product Safety Commission has advised e-cigarettes do not fall under its jurisdiction. As noted in October 2014, and as was the case when Plaintiff purchased his e-cigarette and its batteries, "no regulation,

---

[11] *See* United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2014, at 2.

code or law applies to the safety of the electronics or batteries in e-cigarettes. While many consumer products are required to be tested by a nationally recognized test laboratory . . . there are no requirements that e-cigarettes be subjected to the product safety testing."[12]

26.    On August 8, 2016, a new FDA rule took effect expanding regulation to e-cigarettes. According to the FDA [t]his final rule has two purposes: (1) To deem all products that meet the definition of "tobacco product" under the law, except accessories of a newly deemed tobacco product, and subject them to the tobacco control authorities in chapter IX of the FD&C Act and FDA's implementing regulations; and (2) to establish specific restrictions that are appropriate for the protection of the public health for the newly deemed tobacco products.

27.    E-cigarettes and e-cigarette batteries have caused numerous fires and explosions injuring consumers. Federal, state, and local efforts have recently been aimed at protecting public health via regulations on sale and use of e-cigarettes, but not on the safety hazards posed by the products themselves.

28.    There is mounting evidence the explosions and fires caused by e-cigarettes and lithium ion batteries are increasing in occurrence. The U.S. Department of Transportation ("DOT") issued a rule banning e-cigarettes from checked bags on airplanes because they have been known to catch fire. The DOT has also determined e-cigarettes may not be used during flight. The explosion of e-cigarettes and lithium ion batteries are not novel occurrences; a California man recently lost his eye as a result of an e-cigarette exploding near him. A southern California woman was set on fire after an e-cigarette exploded while she was a passenger in a car. An Atlanta woman's couch and rug caught on fire after an e-cigarette exploded, almost burning her house down. Complaints of injury caused by e-cigarettes continue to rise as the devices' popularity increases.

---

[12] *Id.*

These products continue to be placed into the stream of commerce in an untested and unsafe condition, and will continue to cause injuries unless and until those responsible are held accountable

29.     The Subject Batteries are such lithium ion batteries.

30.     Upon information and belief, Defendant MXJO sells MXJO IMR 18650 lithium ion batteries such as the Subject Batteries worldwide, including in New Mexico.

31.     It has been common practice for users and consumers to utilize lithium ion batteries to power their e-cigarette devices since the inception of e-cigarettes in 2003.

32.     Defendant MXJO, its agents, servants and employees, participated in the design, formulation, production, manufacture, construction, assembly, marketing, distribution, delivery, and sale of the MXJO IMR 18650 lithium ion batteries, including the Subject Batteries.

33.     Defendant Tribal Vapors, its agents, servants and employees, participated in marketing, distribution and/or sale of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries.

34.     Defendant VaporBeast, its agents, servants and employees, participated in marketing, distribution and/or sale of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries.

35.     Prior to the date of the incident which forms the basis of this action, Defendant Tribal Vapors purchased the Subject Batteries designed, manufactured and distributed by Defendant MXJO from Defendant VaporBeast.

36.     Prior to the date of the incident which forms the basis of this action, Plaintiff purchased the Subject Batteries designed, manufactured and distributed by Defendant MXJO from Defendant Tribal Vapors.

37.     On or about July 29, 2016, Plaintiff began his usual morning routine in getting ready for work at Holloman Airforce Base. Before walking out the door, he placed the two subject MXJO IMR 18650 mAh 3000 lithium ion batteries in the front-left pocket of his pants.

38.     Plaintiff arrived at Holloman Airforce Base and worked for several hours.

39.      As he sat at his desk reading an email, Plaintiff heard a 'hissing' sound coming from his pants pocket. Plaintiff immediately felt an intense pain on his left lower extremity, followed up a sudden 'flash' as the Subject Batteries exploded in his pocket.

40.     Plaintiff tipped backward in his desk chair; landing hard on the ground on his back.

41.     On his back, Plaintiff immediately began to hit his pants pocket to snuff out the flames. In doing so, he was able to coerce the burning-hot batteries out of his pocket; burning his hands in the process.

42.     After peering down at the scorched flesh on his left lower extremity and his hands, Plaintiff immediately rushed to the bathroom and began running cold water over his hands and onto his leg.

43.     A short time later, paramedics were called to the scene. Plaintiff was placed on a stretcher and transported to Gerald Champion Regional Medical Center to receive emergency medical treatment. Due to the severity of his injuries, Plaintiff was subsequently medevacked to University Medical Center in Lubbock, Texas for further treatment for his burn injuries.

44.     At no time prior to the Incident did Plaintiff have facts or information sufficient to apprise him, actually or constructively, of the dangers posed by the defective condition of the Subject Batteries.

45.     At no time prior to the Incident did Plaintiff, upon having facts or information which not only apprised him of the defective condition of the Subject Batteries but also imparted

knowledge and appreciation of the dangers posed thereby, then proceed to make use of the Subject Batteries in an unreasonable or unforeseeable manner.

46.     Plaintiff has suffered and will continue to suffer the effects of permanent scarring due to the injuries sustained in the Incident, as well as severe physical pain and mental anguish as a result of the injuries sustained in the Incident.

47.     As a result of the Incident, Plaintiff has incurred substantial medical bills totaling more than $130,000.00.

48.     Upon information and belief, Defendant Tribal Vapors was aware, or should have been aware, that the MXJO IMR 18650 lithium ion batteries, including the Subject Batteries were defective due to their manufacture, construction, design, formulation; due to their inadequate warnings or instructions; and/or due to being unit fit for either their ordinary and foreseeable purpose, or the particular purpose for which they were purported to be sold.

49.     Upon information and belief, Defendant VaporBeast was aware, or should have been aware, that the MXJO IMR 18650 lithium ion batteries, including the Subject Batteries were defective due to their manufacture, construction, design, formulation; due to their inadequate warnings or instructions; and/or due to being unit fit for either their ordinary and foreseeable purpose, or the particular purpose for which they were purported to be sold.

50.     Upon information and belief, Defendant MXJO was aware, or should have been aware, that MXJO IMR 18650 lithium ion batteries, including the Subject Batteries were defective due to their manufacture, construction, design, formulation; due to their inadequate warnings or instructions; and/or due to being unit fit for either their ordinary and foreseeable purpose, or the particular purpose for which they were purported to be sold.

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### (AGAINST DEFENDANT TRIBAL VAPORS)

51.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

52.     Defendant Tribal Vapors sold MXJO IMR 18650 lithium ion batteries, including the Subject Batteries to Plaintiff from its retail outlet.

53.     Defendant Tribal Vapors distributed and/or sold the Subject Batteries with actual or constructive knowledge that it would be purchased and used by members the general public, such as Plaintiff.

54.     The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations to the condition in which they were sold by Defendant Tribal Vapors.

55.     From the time the Subject Batteries left the control of Defendant Tribal Vapors until the time of the Incident, they did not undergo any substantial changes or alterations.

56.     At the time they were distributed and/or sold by Defendant Tribal Vapors, the Subject Batteries were defective in its design, manufacture and/or warnings and was unreasonably dangerous for its foreseeable uses.

57.     At the time it was distributed and/or sold by Defendant Tribal Vapors, the Subject Batteries were defective in their manufacture and/or design for one or more of the following reasons:

        a.  The Subject Batteries deviated from their design specifications, formulas, and/or performance standards;

        b.  The Subject Batteries were designed and manufactured without any form of internal temperature control or protection circuitry;

    c.   The Subject Batteries failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

    d.   The Subject Batteries were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

    e.   The Subject Batteries were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

    f.   The Subject Batteries were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

    g.   The Subject Batteries were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

    h.   The Subject Batteries were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

    i.   The Subject Batteries were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid; and

    j.   In such other particulars as the evidence may show.

58.    Defendant Tribal Vapors is also strictly liable as the Subject Batteries were defective and unreasonably dangerous due to inadequate warnings and/or instructions for use because, *inter alia*:

    a.   Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

    b.   Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress, but failed to provide adequate warnings, labels or instructions related to that risk;

14

c. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up, but failed to provide adequate warnings, labels or instructions related to that risk;

d. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner whereby heat and energy could rapidly escape from the battery, but failed to provide adequate warnings, labels or instructions related to that risk;

e. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure, but failed to provide adequate warnings, labels or instructions related to that risk;

f. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure, but failed to provide adequate warnings, labels or instructions related to that risk;

g. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries, including the Subject Batteries, would not be aware of industry standards, instructions on proper use, and instructions on proper storage of the Subject Batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

h. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known, that both its own personnel, its distributors and the end users and consumers of its MXJO IMR 18650 lithium ion batteries, including the Subject Batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

i. Defendant Tribal Vapors failed to provide warnings or instructions that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

j. Defendant Tribal Vapors failed to provide adequate warnings that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the MXJO IMR 18650 lithium ion batteries, including the Subject

Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

k. Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries;

l. Upon information and belief, Defendant Tribal Vapors failed to provide warnings or instructions that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries;

m. Upon information and belief, Defendant Tribal Vapors failed to provide warnings that a retailer/seller/distributor exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries; and

n. In such other particulars as the evidence may show.

59.     The risk of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries energizing, exploding and/or catching fire when being used and/or stored is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

60.     Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

61.     The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from its manufacture could have been reduced or avoided entirely had the Subject Batteries not deviated from its design specifications, formulas, and/or performance standards.

62.     The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

16

63.     The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

64.     As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

65.     As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

66.     Wherefore, Plaintiff requests a judgment against Defendant Tribal Vapors for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

### SECOND CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### (AGAINST DEFENDANT MXJO)

67.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

68.     Defendant MXJO designed, manufactured, assembled, distributed, tested, inspected and sold MXJO IMR 18650 lithium ion batteries, including the Subject Batteries.

69.     Defendant MXJO manufactured, designed, assembled, distributed, tested, inspected and sold the Subject Batteries with actual or constructive knowledge that they would be purchased and used by members the general public, such as Plaintiff.

70.     The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

71.     From the time the Subject Batteries left the control of Defendant MXJO until the time of the Incident, they did not undergo any substantial changes or alterations.

72.     At the time they were produced and distributed by Defendant MXJO, the Subject Batteries were defective in their design, manufacture and/or warnings and was unreasonably dangerous for their foreseeable uses.

73.     At the time they were produced and distributed by Defendant MXJO, the Subject Batteries were defective in their manufacture and/or design for or more of the following reasons:

   a. The Subject Batteries deviated from their design specifications, formulas, and/or performance standards;

   b. The Subject Batteries were designed and manufactured without any form of internal temperature control or protection circuitry;

   c. The Subject Batteries failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

   d. The Subject Batteries were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

   e. The Subject Batteries were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

   f. The Subject Batteries were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

   g. The Subject Batteries were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

   h. The Subject Batteries were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

   i. The Subject Batteries were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid; and

j.   In such other particulars as the evidence may show.

74.   Defendant MXJO is also strictly liable as the Subject Batteries was defective and

unreasonably dangerous due to inadequate warnings and/or instructions for use because, *inter alia*:

a.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

b.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress, but failed to provide adequate warnings, labels or instructions related to that risk;

c.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up, but failed to provide adequate warnings, labels or instructions related to that risk;

d.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner whereby heat and energy could rapidly escape from the battery, but failed to provide adequate warnings, labels or instructions related to that risk;

e.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure, but failed to provide adequate warnings, labels or instructions related to that risk;

f.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure, but failed to provide adequate warnings, labels or instructions related to that risk;

g.   Defendant MXJO knew, or in the exercise of reasonable care, should have known that its own personnel, its distributors and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

h.   Defendant MXJO knew, or in the exercise of reasonable care, should have known, that both its own personnel, its distributors and the end users and consumers of its

MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant MXJO failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

j.  Defendant MXJO failed to provide adequate warnings that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

k.  Upon information and belief, Defendant MXJO failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries;

l.  Upon information and belief, Defendant MXJO failed to provide warnings that a manufacturer exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries; and

m.  In such other particulars as the evidence may show.

75.     The risk of MXJO IMR 18650 lithium ion batteries, energizing, exploding and/or catching fire when being used and/or stored is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

76.     Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

77.     The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from their manufacture could have been reduced or avoided entirely had the Subject Batteries not deviated from their design specifications, formulas, and/or performance standards.

78.     The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

79.     The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

80.     As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

81.     As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

82.     Wherefore, Plaintiff requests a judgment against Defendant MXJO for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### (AGAINST DEFENDANT VAPORBEAST)

83.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

84.     Defendant VaporBeast distributed and sold MXJO IMR 18650 lithium ion batteries, including the Subject Batteries.

85.     Defendant VaporBeast distributed and sold the Subject Batteries with actual or constructive knowledge that they would be purchased and used by members the general public, such as Plaintiff.

86.     The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

87.     From the time the Subject Batteries left the control of Defendant VaporBeast until the time of the Incident, they did not undergo any substantial changes or alterations.

88.     At the time they were sold and distributed by Defendant VaporBeast, the Subject Batteries were defective in their design, manufacture and/or warnings and was unreasonably dangerous for their foreseeable uses.

89.     At the time they were, distributed and  sold by Defendant VaporBeast the Subject Batteries were defective in their manufacture and/or design for one or more of the following reasons:

  a.  The Subject Batteries deviated from their design specifications, formulas, and/or performance standards;

  b.  The Subject Batteries were designed and manufactured without any form of internal temperature control or protection circuitry;

  c.  The Subject Batteries failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

  d.  The Subject Batteries were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

  e.  The Subject Batteries were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

f.  The Subject Batteries were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

g.  The Subject Batteries were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

h.  The Subject Batteries were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

i.  The Subject Batteries were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid; and

j.  In such other particulars as the evidence may show.

90.     Defendant VaporBeast are also strictly liable as the Subject Batteries were defective

and unreasonably dangerous due to inadequate warnings and/or instructions for use because, *inter*

*alia*:

a.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

b.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress, but failed to provide adequate warnings, labels or instructions related to that risk;

c.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up, but failed to provide adequate warnings, labels or instructions related to that risk;

d.  Defendant VaporBeast Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner whereby heat and energy could rapidly escape from the battery, but failed to provide adequate warnings, labels or instructions related to that risk;

e.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could

cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure, but failed to provide adequate warnings, labels or instructions related to that risk;

f.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure, but failed to provide adequate warnings, labels or instructions related to that risk;

g.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that its own personnel  and the end users and consumers of its MXJO IMR 18650 lithium ion batteries, including the Subject Batteries, would not be aware of industry standards, instructions on proper use, and instructions on proper storage of the Subject Batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

h.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known, that both its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries, including the Subject Batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant VaporBeast failed to provide warnings or instructions that a distributor/seller exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

j.  Defendant VaporBeast failed to provide adequate warnings that a distributor/seller exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the MXJO IMR 18650 lithium ion batteries, including the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

k.  Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries;

l.  Upon information and belief, Defendant VaporBeast failed to provide warnings or instructions that a distributor/seller exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated,

foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries;

m.  Upon information and belief, Defendant VaporBeast failed to provide warnings that a distributor/seller r exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries; and

n.  In such other particulars as the evidence may show.

91.     The risk of MXJO IMR 18650 lithium ion batteries, energizing, exploding and/or catching fire when being used and/or stored is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

92.     Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

93.     The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from their manufacture could have been reduced or avoided entirely had the Subject Batteries not deviated from its design specifications, formulas, and/or performance standards.

94.     The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

95.     The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

96.     As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

97.     As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

98.     Wherefore, Plaintiff requests a judgment against Defendant VaporBeast for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**(AGAINST DEFENDANT TRIBAL VAPORS)**

99.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

100.    The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

101.    From the time the Subject Batteries left the control of Defendant Tribal Vapors until the time of the Incident, they did not undergo any substantial changes or alterations.

102.    Defendant Tribal Vapors owed a duty to Plaintiff and other users of their products to exercise due care in the sale and distribution of the Subject Batteries.

103.    Defendant Tribal Vapors was negligent, careless, and reckless in the sale of the Subject Batteries and breached duties owed to the Plaintiff for one or more of the following reasons:

      a.  Selling the Subject Batteries although they deviated from their design specifications, formulas, and/or performance standards;

      b.  Selling the Subject Batteries although they were designed and manufactured without any form of internal temperature control or protection circuitry;

c.  Selling the Subject Batteries although they failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

d.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

e.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

f.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

g.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

h.  Selling the Subject Batteries although it was designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein; and

i.  Selling the Subject Batteries although they were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid.

104.    Defendant Tribal Vapors was also negligent, careless and/or reckless in the sale of the Subject Batteries and breached duties owed to the Plaintiff, as the product had inadequate warnings and/or instructions for use because, *inter alia*:

a.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

b.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress, but failed to provide adequate warnings, labels or instructions related to that risk;

27

c.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up, but failed to provide adequate warnings, labels or instructions related to that risk;

d.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner whereby heat and energy could rapidly escape from the battery, but failed to provide adequate warnings, labels or instructions related to that risk;

e.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure, but failed to provide adequate warnings, labels or instructions related to that risk;

f.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure, but failed to provide adequate warnings, labels or instructions related to that risk;

g.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

h.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known, that both its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant Tribal Vapors failed to provide warnings or instructions that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

j.  Defendant Tribal Vapors failed to provide adequate warnings that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

28

      k.  Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries;

      l.  Upon information and belief, Defendant Tribal Vapors failed to provide warnings or instructions that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries;

      m.  Upon information and belief, Defendant Tribal Vapors failed to provide warnings that a retailer/seller/distributor exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries; and

      n.  In such other particulars as the evidence may show.

105.    The risk of MXJO IMR 18650 lithium ion batteries, energizing, exploding and/or catching fire when being used and/or stored is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

106.    Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

107.    The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from manufacture could have been reduced or avoided entirely had the MXJO IMR 18650 lithium ion batteries not deviated from their design specifications, formulas, and/or performance standards.

108.    The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

109.    The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

110.    As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

111.    As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

112.    Wherefore, Plaintiff requests a judgment against Defendant Tribal Vapors for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**FIFTH CAUSE OF ACTION
NEGLIGENCE
(AGAINST DEFENDANT MXJO)**

113.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

114.    The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

115.    From the time the Subject Batteries left the control of Defendant MXJO until the time of the Incident, they did not undergo any substantial changes or alterations.

116.    Defendant MXJO owed a duty to Plaintiff and other users of its products to exercise due care in the design, manufacture, assembly, distribution, testing, inspection and sale of the Subject Batteries.

117.     Defendant MXJO was negligent, careless, and reckless in the sale of the Subject Batteries and breached duties owed to the Plaintiff for one or more of the following reasons:

a.   Manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries although they deviated from their design specifications, formulas, and/or performance standards;

b.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries without any form of internal temperature control or protection circuitry;

c.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries although they failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

d.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

e.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries using material or materials that caused or contributed to cause excessive thermal and pressure build up;

f.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

g.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

h.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries without conducting adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

i.   Designing, manufacturing, assembling, distributing, testing, inspecting, and/or selling the Subject Batteries in a manner such that it exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid; and

j.   In such other particulars as the evidence may show.

118.    Defendant MXJO was also negligent, careless and/or reckless in the sale of the Subject Batteries and breached duties owed to the Plaintiff, as the product had inadequate warnings and/or instructions for use because, *inter alia*:

    a.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

    b.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress but failed to provide adequate warnings, labels or instructions related to that risk;

    c.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up but failed to provide adequate warnings, labels or instructions related to that risk;

    d.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner whereby heat and energy could rapidly escape from the battery but failed to provide adequate warnings, labels or instructions related to that risk;

    e.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure but failed to provide adequate warnings, labels or instructions related to that risk;

    f.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure but failed to provide adequate warnings, labels or instructions related to that risk;

    g.    Defendant MXJO knew, or in the exercise of reasonable care, should have known that its own personnel, its distributors and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

    h.    Defendant MXJO knew, or in the exercise of reasonable care, should have known, that both its own personnel, its distributors and the end users and consumers of its

2:19-cv-00686-JB-GJF   Document 1   Filed 07/26/19   Page 33 of 56

MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant MXJO failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

j.  Defendant MXJO failed to provide adequate warnings that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

k.  Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant MXJO knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries

l.  Upon information and belief, Defendant MXJO failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries;

m.  Upon information and belief, Defendant MXJO failed to provide warnings that a manufacturer exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries; and

n.  In such other particulars as the evidence may show.

119.    The risk of MXJO IMR 18650 lithium ion batteries, energizing, exploding and/or catching fire when being used and/or stored is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

120.    Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

121.    The unreasonable dangers associated with the foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm

33

stemming from their manufacture could have been reduced or avoided entirely had the Subject Batteries not deviated from their design specifications, formulas, and/or performance standards.

122.    The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

123.    The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

124.    As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

125.    As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

126.    Wherefore, Plaintiff requests a judgment against Defendant MXJO for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE
## (AGAINST DEFENDANT VAPORBEAST)

127.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

128.    The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

34

129.     From the time the Subject Batteries left the control of Defendant VaporBeast until the time of the Incident, they did not undergo any substantial changes or alterations.

130.     Defendant VaporBeast owed a duty to Plaintiff and other users of its products to exercise due care in the sale and distribution of the Subject Batteries.

131.     Defendant VaporBeast were negligent, careless, and reckless in the sale of the Subject Batteries and breached duties owed to the Plaintiff for one or more of the following reasons:

   a.  Selling the Subject Batteries although they deviated from their design specifications, formulas, and/or performance standards;

   b.  Selling the Subject Batteries although they were designed and manufactured without any form of internal temperature control or protection circuitry;

   c.  Selling the Subject Batteries although they failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

   d.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

   e.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

   f.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

   g.  Selling the Subject Batteries although they were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

   h.  Selling the Subject Batteries although they were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein; and

   i.  Selling the Subject Batteries although they were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff,

to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid.

132.    Defendant VaporBeast were also negligent, careless and/or reckless in the sale of the Subject Batteries and breached duties owed to the Plaintiff, as the product had inadequate warnings and/or instructions for use because, *inter alia*:

   a.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

   b.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress, but failed to provide adequate warnings, labels or instructions related to that risk;

   c.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up, but failed to provide adequate warnings, labels or instructions related to that risk;

   d.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner whereby heat and energy could rapidly escape from the battery, but failed to provide adequate warnings, labels or instructions related to that risk;

   e.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure, but failed to provide adequate warnings, labels or instructions related to that risk;

   f.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure, but failed to provide adequate warnings, labels or instructions related to that risk;

   g.    Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion

36

batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

h.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known, that both its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant VaporBeast failed to provide warnings or instructions that a seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries, but failed to provide adequate warnings, labels or instructions related to that risk;

j.  Defendant VaporBeast failed to provide adequate warnings that a seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

k.  Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries;

l.  Upon information and belief, Defendant VaporBeast failed to provide warnings or instructions that a seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries;

m.  Upon information and belief, Defendant VaporBeast failed to provide warnings that a seller/distributor exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries; and

n.  In such other particulars as the evidence may show.

133.    The risk of MXJO IMR 18650 lithium ion batteries, energizing, exploding and/or catching fire when being used and/or stored is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

134.    Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

135.    The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from manufacture could have been reduced or avoided entirely had the MXJO IMR 18650 lithium ion batteries not deviated from their design specifications, formulas, and/or performance standards.

136.    The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

137.    The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

138.    As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

139.    As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

140.    Wherefore, Plaintiff requests a judgment against Defendant VaporBeast for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES
## (AGAINST DEFENDANT TRIBAL VAPORS)

141.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

142.   Defendant Tribal Vapors is a merchant with respect to the subject goods at issue, including the Subject Batteries.

143.   Defendant Tribal Vapors was a seller of the Subject Batteries and, thus, has impliedly warranted that the Subject Batteries which it sold was fit for their ordinary and foreseeable purposes and for the particular purpose for which they were sold.

144.   The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

145.   From the time the Subject Batteries left the control of Defendant Tribal Vapors until the time of the Incident, they did not undergo any substantial changes or alterations.

146.   Plaintiff made ordinary and foreseeable use of the Subject Batteries and Plaintiff relied upon the implied warranties given by Defendant Tribal Vapors.

147.   Contrary to those implied warranties, at the time they were distributed and/or sold by Defendant Tribal Vapors the Subject Batteries were not fit for either their ordinary and foreseeable purpose, or the particular purpose for which they were purported to be sold, and were defective and unreasonably dangerous for one or more of the following reasons:

    a.   The Subject Batteries was manufactured such that they deviated from their design specifications, formulas, and/or performance standards;

    b.   The Subject Batteries were designed and manufactured without any form of internal temperature control or protection circuitry;

c.  The Subject Batteries failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

d.  The Subject Batteries were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

e.  The Subject Batteries were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

f.  The Subject Batteries were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

g.  The Subject Batteries were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

h.  The Subject Batteries were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

i.  The Subject Batteries were designed in a manner such that it exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid; and

j.  In such other particulars as the evidence may show.

148.    Likewise, at the time they were distributed and/or sold by Defendant Tribal Vapors, the Subject Batteries was not fit for either its ordinary and foreseeable purpose or the particular purpose for which it was purported to be sold because, *inter alia*:

a.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

b.  Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress but failed to provide adequate warnings, labels or instructions related to that risk;

c. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up but failed to provide adequate warnings, labels or instructions related to that risk;

d. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner whereby heat and energy could rapidly escape from the battery but failed to provide adequate warnings, labels or instructions related to that risk;

e. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure but failed to provide adequate warnings, labels or instructions related to that risk;

f. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the Subject Batteries was designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure but failed to provide adequate warnings, labels or instructions related to that risk;

g. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

h. Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known, that both its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

i. Defendant Tribal Vapors failed to provide warnings or instructions that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of vendor, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

j. Defendant Tribal Vapors failed to provide adequate warnings that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk.

41

k.  Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant Tribal Vapors knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries

l.  Upon information and belief, Defendant Tribal Vapors failed to provide warnings or instructions that a retailer/seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries;

m.  Upon information and belief, Defendant Tribal Vapors failed to provide warnings that a retailer/seller/distributor exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries; and

n.  In such other particulars as the evidence may show.

149.    Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

150.    The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from their manufacture could have been reduced or avoided entirely had the Subject Batteries not deviated from their design specifications, formulas, and/or performance standards.

151.    The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

152.    The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

153.     As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

154.     As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

155.     Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Defendant Tribal Vapors.

156.     As a direct, actual and proximate result of Defendant Tribal Vapors' breaches of its warranties, Plaintiff suffered debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

157.     Wherefore, Plaintiff requests a judgment against Defendant Tribal Vapors for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## EIGHTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES
## (AGAINST DEFENDANT MXJO)

158.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

159.     Defendant MXJO is a merchant with respect to the subject goods at issue, including the Subject Batteries.

160.     Defendant MXJO was a seller of the Subject Batteries and, thus, have impliedly warranted that the Subject Batteries which it sold were fit for its ordinary and foreseeable purposes and for the particular purpose for which it they were sold.

161.    The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

162.    From the time the Subject Batteries left the control of Defendant MXJO until the time of the Incident, they did not undergo any substantial changes or alterations.

163.    Plaintiff made ordinary and foreseeable use of the Subject Batteries and Plaintiff relied upon the implied warranties given by Defendant MXJO.

164.    Contrary to those implied warranties, at the time they were distributed and/or sold by Defendant MXJO, the Subject Batteries was not fit for either their ordinary and foreseeable purpose, or the particular purpose for which they were purported to be sold, and was defective and unreasonably dangerous for one or more of the following reasons:

a.    The Subject Batteries were manufactured such that they deviated from their design specifications, formulas, and/or performance standards;

a.    The Subject Batteries were designed and manufactured without any form of internal temperature control or protection circuitry;

b.    The Subject Batteries failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

c.    The Subject Batteries were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

d.    The Subject Batteries were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

e.    The Subject Batteries were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

f.    The Subject Batteries were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

44

g.  The Subject Batteries were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein; and

h.  The Subject Batteries were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid.

165.  Likewise, at the time they were distributed and/or sold by Defendant MXJO, the Subject Batteries was not fit for either their ordinary and foreseeable purpose or the particular purpose for which they were purported to be sold because, *inter alia*:

a.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

b.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they failed to resist the ordinary pressures stress, thermal stress, and fatigue stress but failed to provide adequate warnings, labels or instructions related to that risk;

c.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up but failed to provide adequate warnings, labels or instructions related to that risk;

d.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner whereby heat and energy could rapidly escape from the battery but failed to provide adequate warnings, labels or instructions related to that risk;

e.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure but failed to provide adequate warnings, labels or instructions related to that risk;

f.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure but failed to provide adequate warnings, labels or instructions related to that risk;

g.  Defendant MXJO knew, or in the exercise of reasonable care, should have known that its own personnel, its distributors and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

h.  Defendant MXJO knew, or in the exercise of reasonable care, should have known, that both its own personnel, its distributors and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant MXJO failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries; and

j.  Defendant MXJO failed to provide adequate warnings that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries.

166.  Similarly, the Subject Batteries was not fit for either their ordinary and foreseeable

purpose or the particular purpose for which they were purported to be sold because, *inter alia*:

a.  Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant MXJO knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries

a.  Upon information and belief, Defendant MXJO failed to provide warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries; and

b.  Upon information and belief, Defendant MXJO failed to provide warnings that a manufacturer exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries.

167.     Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

168.     The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from their manufacture could have been reduced or avoided entirely had Subject Batteries not deviated from their design specifications, formulas, and/or performance standards.

169.     The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

170.     The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

171.     As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

172.     As a direct and proximate result of the above-noted defect(s) of the Subject Batteries Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

173.     Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Defendant MXJO.

174.     As a direct, actual and proximate result of Defendant MXJO's breaches of its warranties, Plaintiff suffered debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

175.     Wherefore, Plaintiff requests a judgment against Defendant MXJO for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## NINTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES
## (AGAINST DEFENDANT VAPORBEAST)

176.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

177.     Defendant VaporBeast is a merchant with respect to the subject goods at issue, including the Subject Batteries.

178.     Defendant VaporBeast was/is a seller of the Subject Batteries and, thus, has impliedly warranted that the Subject Batteries which it sold were fit for their ordinary and foreseeable purposes and for the particular purpose for which they were sold.

179.     The Subject Batteries were expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

180.     From the time the Subject Batteries left the control of Defendant VaporBeast until the time of the Incident, they did not undergo any substantial changes or alterations.

181.     Plaintiff made ordinary and foreseeable use of the Subject Batteries and Plaintiff relied upon the implied warranties given by Defendant VaporBeast.

182.     Contrary to those implied warranties, at the time they were distributed and/or sold by Defendant VaporBeast the Subject Batteries was not fit for either their ordinary and foreseeable purpose, or the particular purpose for which they were purported to be sold, and was defective and unreasonably dangerous for one or more of the following reasons:

48

a.  The Subject Batteries were manufactured such that they deviated from their design specifications, formulas, and/or performance standards;

b.  The Subject Batteries were designed and manufactured without any form of internal temperature control or protection circuitry;

c.  The Subject Batteries failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

d.  The Subject Batteries were designed, manufactured and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

e.  The Subject Batteries were designed, manufactured and/or fabricated using material or materials that caused or contributed to cause excessive thermal and pressure build up;

f.  The Subject Batteries were designed, manufactured and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

g.  The Subject Batteries were designed, manufactured and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure;

h.  The Subject Batteries were designed and sold without underdoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

i.  The Subject Batteries were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid; and

j.  In such other particulars as the evidence may show.

183.  Likewise, at the time they were distributed and/or sold by Defendant VaporBeast, the Subject Batteries were not fit for either their ordinary and foreseeable purpose or the particular purpose for which they were purported to be sold because, *inter alia*:

a.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that there was a significant risk of energizing, explosion, fire, and burn injuries associated with the foreseeable use and/or storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk;

49

b.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress but failed to provide adequate warnings, labels or instructions related to that risk;

c.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute to cause excessive thermal and pressure build up but failed to provide adequate warnings, labels or instructions related to that risk;

d.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner whereby heat and energy could rapidly escape from the battery but failed to provide adequate warnings, labels or instructions related to that risk;

e.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they could cause or contribute breaching of the exterior of the battery due to unreasonable heat and pressure but failed to provide adequate warnings, labels or instructions related to that risk;

f.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the Subject Batteries were designed in a manner such that they should not be stored in a pocket, and that short circuiting of the battery could lead to catastrophic failure but failed to provide adequate warnings, labels or instructions related to that risk;

g.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of industry standards, instructions on proper use, and instructions on proper storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

h.  Defendant VaporBeast knew, or in the exercise of reasonable care, should have known, that both its own personnel and the end users and consumers of its MXJO IMR 18650 lithium ion batteries would not be aware of the dangers associated with the use and storage of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

i.  Defendant VaporBeast failed to provide warnings or instructions that a seller/distributor exercising reasonable care would have provided concerning the risk of explosion, fire, and burn injuries, in light of the anticipated, foreseeable and known uses and environments of use of MXJO IMR 18650 lithium ion batteries but failed to provide adequate warnings, labels or instructions related to that risk;

j.   Defendant VaporBeast failed to provide adequate warnings that a seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries associated with the storage of the Subject Batteries but failed to provide adequate warnings, labels or instructions related to that risk.

k.   Upon information and belief, after receiving post-marketing incident reports or testing data, Defendant VaporBeast knew, or in the exercise of reasonable care, should have known that the there was a significant risk of energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries, including the Subject Batteries

l.   Upon information and belief, Defendant VaporBeast failed to provide warnings or instructions that a seller/distributor exercising reasonable care would have provided concerning the risk of energizing, explosion, fire, and burn injuries, in light of incident reports that some people had suffered burn injuries during anticipated, foreseeable, known and/or ordinary use of MXJO IMR 18650 lithium ion batteries;

m.  Upon information and belief, Defendant VaporBeast failed to provide warnings that a seller/distributor exercising reasonable care would have provided concerning the energizing, explosion, fire, and burn injuries associated with the use and/or storage of MXJO IMR 18650 lithium ion batteries; and

n.   In such other particulars as the evidence may show.

184.   Plaintiff did not know at the time of his use of the Subject Batteries, nor at any time prior thereto, of the existence of the defects in the product.

185.   The unreasonable dangers associated with the  foreseeable uses of the Subject Batteries exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from their manufacture could have been reduced or avoided entirely had the Subject Batteries not deviated from their design specifications, formulas, and/or performance standards.

186.   The unreasonable dangers associated with the uses of the Subject Batteries outweighs their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

187.   The unreasonable dangers associated with the uses of the Subject Batteries outweigh their utility, and the foreseeable risk of harm posed by them could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

188.     As a direct and proximate result of the above-noted defect(s), the Subject Batteries energized, exploded and/or caught fire while in Plaintiff's pocket.

189.     As a direct and proximate result of the above-noted defect(s) of the Subject Batteries, Plaintiff sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

190.     Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Defendant VaporBeast.

191.     As a direct, actual and proximate result of Defendant VaporBeast's breaches of its warranties, Plaintiff suffered debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

192.     Wherefore, Plaintiff requests a judgment against Defendant VaporBeast for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## TENTH CAUSE OF ACTION
## PUNITIVE DAMAGES
## (DEFENDANT MXJO, DEFENDANT TRIBAL VAPORS & DEFENDANT VAPORBEAST)

193.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

194.     Defendant MXJO, Defendant Tribal Vapors and Defendant VaporBeast each had a duty to refrain from willful and wanton acts, omissions and/or misconduct which would foreseeably expose Plaintiff to an unreasonable risk of harm and cause injury.

195.     Upon information and belief, Defendant MXJO, Defendant Tribal Vapors and Defendant VaporBeast each breached their duties and committed one or more of the following acts

or omission amounting to willful and wanton misconduct, in that they acted with reckless disregard

for the health, safety and well-being of the Plaintiff and others similarly situated by:

a. Having actual knowledge of the defective condition and/or hazards of the MXJO IMR 18650 lithium ion batteries yet acting in a way that contributed to Plaintiffs' injuries for material gain;

b. Designing, manufacturing, selling, distributing, marketing, and/or otherwise placing into the stream of commerce the Subject Batteries which posed an unreasonable risk of energizing, exploding or catching flame to users and consumers, despite knowledge of the product's dangerous, defective condition;

c. Failing to provide any adequate warnings or hazard communications to users and consumers purchasing MXJO IMR 18650 lithium ion batteries;

d. Failing to disclose, and/or concealing, information in their respective possession concerning the risks to users and consumers that MXJO IMR 18650 lithium ion batteries would energize, explode or catch fire; and

e. In such other particulars as the evidence may show.

196.    Upon information and belief, as a direct and proximate result of one or more of the

foregoing willful and wanton acts/and or omissions on the part of each of the Defendants, Plaintiff

was exposed to the defective Subject Batteries which energized, exploded and/or caught fire,

resulting in the injuries and damages described herein.

197.    An award of punitive damages is necessary and appropriate to punish Defendants

for their willful, wanton and/or intentional misconduct and/or reckless disregard for the health,

safety and well-being of Plaintiff and others and to deter said Defendants and others similarly

situated from engaging in like misconduct in the future.

## **PRAYER FOR RELIEF**

198.    **WHEREFORE**, Plaintiffs pray as follows:

a. Judgment against Defendant MXJO, Defendant Tribal Vapors and Defendant VaporBeast, jointly and severally;

b. For such sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

c. For exemplary and punitive damages against Defendant MXJO, Defendant Tribal Vapors and Defendant VaporBeast, in an amount as a jury may determine to halt such conduct;

d. For the costs of this suit, including attorney's fees; and

e. For such other and further relief to which they may be entitled, that this Honorable Court deems just and proper.

## JURY DEMAND

199. Plaintiff hereby demands a trial by jury.

Dated: July 26, 2019.

/s/ Dennis K. Wallin
Dennis K. Wallin
Alisa Lauer
The Spence Law Firm NM, LLC
1600 Mountain Rd. NW
Albuquerque, NM 87104
(505) 832-6363
wallin@spencelawyers.com

*In association with:*

Adam J. Kress, Esq.
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC.**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Phone: (612) 436-1800
akress@johnsonbecker.com

*Attorneys for Plaintiff Andrew Snelling*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit ☐ 485 Telephone Consumer Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**    ☐ Yes    ☐No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.